JOSHUA HARLOW *vs.* JOHN ROGERS & another.
SAME *vs.* LYMAN KINSLEY & others.

The Proprietors of the West Boston Bridge, under the authority of *St.* 1792, *c.* 87, § 1, acquired a fee, and not merely an easement, in lands conveyed to them in fee by the owners thereof, over which their causeway and "Little Bridge," so called, was built, at the westerly end of their main bridge.

The deed to the Hancock Free Bridge Corporation, by the Proprietors of the West Boston Bridge, of their franchise, made pursuant to *St.* 1846, *c.* 146, in terms included " all their right, title, and interest in and to the causeway from the westerly abutment of said bridge." *Held*, that this deed conveyed a fee in the flats owned by the grantors, under said causeway and under "Little Bridge," a part thereof; and therefore, that a subsequent deed from the same grantors of a tract of land adjoining said causeway on the north, by metes and bounds, " together with all the right, title, and interest of said proprietors to all the flats adjoining the above, not previously sold and conveyed," passed no title to the flats south of said causeway and Little Bridge.

WRITS OF ENTRY. The cases were submitted to this court at October term, 1851, upon the following statement of facts :

" The same piece of land, consisting of flats, is demanded in both actions, and described as ' a certain parcel of land, with the appurtenances, situated in said Cambridge, in the county of Middlesex, and bounded and described as follows : Beginning sixteen hundred and sixty-five feet west from the western abutment of Cambridge Bridge, on the south side of the causeway, at the centre of the creek, which runs under the little bridge, thence running upon said causeway westerly, a little to the north, nine hundred and eighty feet; then turning at right angles, and running south, a little to the west, in a straight line to the thread and centre of the river, sixteen

hundred feet, more or less; then turning and running easterly, along the said thread and centre of the river, nine hundred and eighty feet; then turning at right angles, and running in a straight line north, a little to the east, sixteen hundred feet, more or less, to the point of beginning.' [See R K on the annexed plan.[1]]

" The demandant claims under a grant of the Proprietors of West Boston Bridge, a corporation duly established by the laws of the commonwealth, and produced three deeds from said corporation, one dated September 14, 1846, the second

[1] Plan showing the most important objects referred to in the cases of *Harlow* v. *Rogers & another; Same* v. *Kinsley & others;* and *Same* v. *Fisk & another:*

R K = flats demanded of *Rogers & others* and of *Kinsley & others.*
P = parallelogram 82 ft. × 100 ft. described in the deeds to the demandant.
F and F' = flats demanded of *Fisk & another.*
B = western end of the long bridge leading over the river to Boston.
The slight dotted line = thread of the creek.

dated May 13, 1847, and the third dated June 22, 1849. The description in the second and third deeds is as follows : ' A certain parcel of land situate, lying, and being in Cambridge aforesaid, and bounded and described as follows, to wit : Beginning at a point on the northerly side of the causeway called the West Boston Bridge, but now called the Hancock Free Bridge, distant forty-four feet in a straight line from the easterly line of the westerly abutment of the bridge upon said causeway called the little bridge ; thence running northerly, perpendicularly to said causeway, one hundred feet ; thence turning and running easterly, and parallel to said causeway, eighty-two feet ; thence turning and running perpendicularly to said causeway, one hundred feet, to said causeway ; thence turning and running westerly on said causeway, eighty-two feet, to the point of beginning, together with all the right, title, and interest of said proprietors to all the flats adjoining the above, not previously sold and conveyed ; the premises herein released being the same intended to be released by the deed of said proprietors to said Harlow, dated on the fourteenth day of September last ; this deed being executed to remedy a defect in the description of said premises contained in the aforesaid deed.' [See P on plan.] The description in the first deed differed from the above, in not giving the directions of the northern and southern lines of the land.

" The third deed, of June 22, 1849, was delivered to the demandant by the agent of the said corporation duly authorized to convey the said land, upon the premises demanded in these suits, as being part and parcel of the premises in the deed described, the said demandant and the said agent having entered and standing thereon. The three deeds to the demandant were executed, acknowledged, and delivered in the manner therein recited, but the validity of their execution is a question for the court. [This point subsequently became immaterial.]

" By the records of said proprietors, it appears that, at a meeting of said corporation, July 24, 1846, the proprietors voted, ' that the treasurer, Joseph Mackay, Esq., be, and he hereby is duly authorized to sign, seal, deliver, and acknowl-

edge in the name and in the behalf of the proprietors, such deed or deeds as may be necessary or proper to convey the remaining real estate of the corporation;' and, in pursuance of this vote, said Mackay made and delivered said deeds to the demandant.

" Said corporation was duly organized, and in pursuance of their corporate powers, and of the votes passed for that purpose, took possession of a strip of land beginning at the westerly end of their main bridge in Cambridge, [see B on plan,] and running westerly in the same general direction as the bridge, one hundred and thirty feet wide through its whole length, and extending to a road leading to Old Cambridge village ; which point is farther west than any part of the demanded premises. The validity of said proceedings is not denied.

" In the centre, or about the centre of said strip of land, the corporation constructed a road or causeway reaching from their main bridge to said road leading to Old Cambridge, and in the construction thereof they built a wall on each side of the causeway and filled in between said walls with mud taken from the sides adjacent thereto, and on the southerly side of said causeway they took the same from a canal fifteen feet wide upon the extreme southerly side of said strip of land taken by the corporation as aforesaid. Said causeway is forty feet wide, and in constructing said road, it became necessary to build a bridge called " The Little Bridge," across a creek or cove, which extended northward from Charles River, and into which the tide flows some distance above said " Little Bridge." In the construction of said " Little Bridge," the corporation built the same upon rows of piles extending across said creek, said rows being about twenty feet apart. This creek and bridge are the same referred to in the declaration and in said three deeds.

" To show that said corporation became seised in fee of the lands claimed by the demandant, he offered the following deeds: 1st. John Chenery (or Jeenery) to said proprietors, dated June 28, 1794. 2d. Ebenezer Swan to said proprietors, dated February 23, 1795. 3d. Thomas Beal to said proprietors, dated February 23, 1795. 4th. Leonard Bond

and others to said proprietors, dated December 7, 1797. 5th. Daniel Mason to said proprietors, dated August 16, 1797. All the grantors in said five deeds were the owners of the whole estate in the premises described in their respective deeds, and the due execution and recording thereof is not denied, and all the said five deeds are, in form, conveyances in fee, with covenants of general warranty.

" The demandant also put into the case the plan of Osgood Carleton, referred to in said five deeds, showing the lands conveyed by Chenery, Swan, Beal, and Bond, and also showing the causeway and the land taken by said corporation as aforesaid, and the ditches or canals on each side of the causeway from which the said material was taken. The land demanded is, as the demandant insists, adjoining to the parcel described by metes and bounds, and conveyed to him by said three deeds of said corporation, by the flats extending under the Little Bridge, which flats were also owned by the said corporation at the time of their said deeds to the demandant, and as the demandant alleges, were conveyed to him by said deeds. Said corporation has never conveyed any part of the demanded premises, unless by the said three deeds to the demandant.

" The tenants are the owners of all the estate which was of Jonas Bond, and which was not conveyed by the said deed of Leonard Bond and others; the division lines between the tenants to the first of the above-named actions, and the tenants to the second, are not supposed to be material to these cases; the demandant having claimed the same land in both actions. The persons designated as owners in Carleton's plan, were owners of all the flats adjoining their respective parcels, but their division lines had not, and have not been marked out. Upon these facts, and all inferences which a jury would be justified in drawing therefrom, the court are authorized to render such judgment as law and justice may require."

The arguments were at Boston, in January, 1853.

*R. F. Fuller*, for the demandant.

*B. F. Jacobs*, for the tenants.

SHAW, C. J. These were real actions brought to recover a

large tract of flats, lying in Cambridge, south of the old West Boston Bridge and Causeway, and west of the " Little Bridge," so called. It appears by the plans taken for and used at the trial, and admitted to be correct, that the western abutment of the main bridge adjoins a tract formerly salt marsh, or flats; it then passes over a causeway some distance, westerly, till it reaches a creek or narrow channel, through which the tide ebbs and flows. This is, or originally was, crossed by the structure, called the Little Bridge, and the way then continues over marsh or flats by a solid causeway to the upland at Cambridge, at a place formerly called Pelham's Island, which was the western terminus of the bridge as fixed by the charter. Judging from Osgood Carlton's plan, taken about the time, and for the use of the Proprietors of the West Boston Bridge, we should judge, that this place, called Pelham's Island, was not a piece of land surrounded by water, according to the usual definition, but a tract of upland surrounded by salt marsh, not unfrequently called an island.

The demandant here, as in all cases of real actions, must recover by the strength of his own title, that of the tenants not being disclosed; nor is it necessary that it should be, until the demandant has made out a *primâ facie* case.

The demandant claims title under a deed from the Proprietors of the West Boston Bridge, made June 22, 1849. This purports to be made to correct a former deed intended to effect the same grant, in which it is supposed there was some informality in the description. By this former deed, the Proprietors of the West Boston Bridge quitclaim to Joshua Harlow, his heirs, &c., a certain piece or parcel of land in Cambridge, described, &c., beginning at a point on the causeway leading from the bridge formerly called the West Boston Bridge, but now the Hancock Free Bridge, distant forty-four feet in a straight line from the westerly abutment of the bridge upon said causeway, called the Little Bridge, thence turning and running northerly, perpendicularly to said causeway, one hundred feet, thence turning and running easterly, parallel to said causeway, eighty-two feet, then turning and running perpendicularly to said causeway, one hundred feet

to said causeway, thence turning and running westerly on said causeway, eighty-two feet, to the point of beginning, " together with all the right, title, and interest of said proprietors to all the flats adjoining the above, not previously sold and conveyed."

It is in virtue of this last clause, that the very large tract of flats demanded in these actions, lying south of the bridge and causeway, are claimed; not as appurtenant or appendant, or as annexed by force of the colony ordinance, but as parcel, and by force of the description.

Several remarks arise, upon the terms of this grant, lying as it does wholly north of the bridge and causeway. 1st. The Little Bridge is called in the deed " Causeway ; " the whole tract embraced in the direct words of grant bounding on the Little Bridge, the westerly line of the tract granted being east of the westerly abutment of the Little Bridge. 2d. The land granted bounds southerly on the northerly line of the bridge, here denominated " Causeway." 3d. There may be, and by the appearance of the plan, which is made part of the case, we think there was a portion of flats, in the creek, lying easterly of the land granted, and between the easterly line described, and the thread or middle line of the creek; and if there was any such, it would pass by this grant, and give some effect to the words used, " together with the flats," &c.

But the claim on the part of the demandant is, that the soil of the flats, under the Little Bridge, belonged, as flats, to the grantors; that the erection of the Little Bridge, though as a part of the bridge, causeway and road, which the proprietors were to erect and maintain, gave them an easement only; that the flats under the bridge, adjoining the land granted, passed by force of the words cited, as " adjoining," and then the large tract of many acres, on the south of the causeway, adjoined the flats under the bridge, and so passed as adjoining. In order to judge of the true construction of this deed, and the claims founded upon it, it is necessary to go out of the deed to ascertain the rights and relations of the grantors, in order to give effect to these words of grant.

The grant, on the face of it is to be construed, with two

exceptions or limitations; first, that the flats in question had been the property, in fact, of the grantors, and adjoining the land conveyed; second, that they had not been previously sold and conveyed by the grantors.

It is not necessary, in determining the present case, to inquire what interest in the flats the Proprietors of the West Boston Bridge acquired, by the various conveyances of Chenery, Swan, Beal, Bond and others, by their various deeds, given soon after the bridge was erected, and for the purpose of building thereon their bridge and causeway, beyond the land and flats, covered by that structure.  One circumstance in regard to that title is peculiar, which is, that by the amendment of their charter, they were authorized and empowered to take and hold land, on which to place their bridge and causeway, in fee, and by the deeds given them by the owners of the land, they did take estates in fee.  By an enabling act, *St.* 1792, *c.* 87, § 1, this corporation was declared capable in law to take and purchase, hold and enjoy all such lands, &c., for the better effecting the purposes of their incorporation, to them and their successors and assigns forever, not exceeding in value $40,000.  And to show that this was not so done through inadvertence, there is a further provision that when the owners do not consent to sell, the corporation may take lands by appraisement, and such lands shall vest in the same proprietors, their successors and assigns in fee simple forever.

We have said that this is peculiar, because in most other cases in this commonwealth, of acquiring lands by the public, or by any corporation vested by legislative charter with the public right to establish highways, bridges, or turnpikes, the right in the soil, whether acquired by grant, or taken by an appraisement, is an easement only, and not a fee in the soil, which vests in the public, or in such corporation.

It is manifest, we think, from this view of the charter, and the facts agreed, that the grantors named to the West Boston Bridge, or some of them, were owners in fee of all the land, marsh, and flats covered by the causeway  and that the Proprietors of the West Boston Bridge, in their corporate capacity, and as part of their franchise, took an estate in fee, in all the

land thus covered by the causeway; and whether they took any other estate by their deeds, is not material to this inquiry.

It appears by the statement of facts, that the Proprietors, in pursuance of their charter, and the deeds aforesaid, took possession of a strip of land beginning at the westerly end of their main bridge, and running westerly in the same direction, one hundred and thirty feet wide, through its whole length, to the road leading to Cambridge, far west of the Little Bridge. In the centre of this strip, the causeway was constructed forty feet wide, supported by walls, with a canal on each side, as appears by the plan. In constructing this causeway, the Little Bridge was built as part of it, over a creek, in which the tide flowed, and from which, as we understand, the tide ebbed at low water. The flats of that creek, therefore, on both sides, were capable of being held and conveyed in fee as private property.

We now come to construe the grant made by the Proprietors of the West Boston Bridge to the demandant, dated June 22, 1849. The description uses the terms "causeway," and "The Little Bridge," indiscriminately, as meaning the same thing, and, indeed, the Little Bridge over this creek is a bridge regarded and described as part of the causeway. The grant is a piece of land, wholly on the north side of the Little Bridge, measuring eighty-two feet on the bridge, and extending one hundred feet northerly from it. After closing the description of this parallelogram of one hundred feet by eighty-two feet, the description adds, "together with all the right, title, and interest of said proprietors to all the flats adjoining the above, not previously sold and conveyed." Applying this description to the place, it would seem probable that the intention of the parties was, that the proprietors should convey their title to flats, being the soil of the creek, from an easterly line of the parcel specially described, easterly, to the middle line or thread of the creek, and north of the bridge throughout this description denominated "causeway." But as the easterly line of this parallelogram, was a straight line, and might not extend in all parts to the thread of the

creek, the additional words, "together with the flats adjoining," were intended to include any portion of flats, lying between such straight line and the thread of the creek, and did not include any flats lying under the Little Bridge, or anywhere south of the north side of that bridge, described as a causeway.

But we do not place the decision of this question wholly or mainly on this construction of the deed; but upon what the proprietors had previously done by their conveyance to the Hancock Free Bridge, which was referred to by both parties at the argument as part of the case. The legislature having, by *St.* 1846, *c.* 146, § 7, authorized the West Boston Bridge Proprietors, to sell and convey their bridge to the Proprietors of the Hancock Free Bridge, the price having been settled, and authority given to officers to make the conveyance, a deed was executed by one corporation to the other on July 1, 1846, which was prior to the date of the first of the three deeds executed by the Proprietors of the West Boston Bridge to the demandant, which was September 14, 1846 ; so that if these three deeds were considered as taking effect at the date of the earliest of them, it would still be later in time, and, of course, subject to the deed to the Hancock Free Bridge. By this deed, after all the appropriate recitals, the Proprietors of the West Boston Bridge convey to the Hancock Free Bridge Corporation, their successors and assigns, their bridge and franchise; " it being well understood, that in said franchise is included all the right, title, and interest which the Proprietors of the West Boston Bridge have in and to the causeway from the westerly abutment of said bridge."

By this deed, the court are of opinion that the fee in the soil, being part of the flats in the creek under the Little Bridge, passed to the proprietors of the Hancock Free Bridge.

The act authorizing the purchase of the West Boston Bridge, with its franchise, *St.* 1846, *c.* 146, obviously contemplated the continuance of that public avenue, for the use and benefit of the public forever. The corporation who were to convey, had been invested with the franchise of purchasing and holding real estate in fee, on which to place their

causeway. They did so purchase and hold land, and erected their causeway upon it. The conveyance of their bridge, causeway, and franchise, passed the fee of the soil on which the causeway was built. Such must have been the intent of the grantors and grantees. Otherwise, the object of the statute, and the purchase made under it, for the use of the public as a way, would be defeated. Conveying the causeway, was conveying all the grantors' right to the land on which it stands; had that been an easement, as in case of common highways and turnpikes, this right may have been construed a perpetual easement; but as that right was a fee, the grantees took a fee; as the grant of a house is held to be a grant of the fee of the land under the house, if the grantor has the fee.

Such being the effect of the deed from the demandant's grantors, the Proprietors of the West Boston Bridge, they have parted with their whole estate in the flats under the Little Bridge, and their subsequent deed to the demandant passed no title to those flats, under the term of " flats adjoining the above, not previously sold." The land granted being, in terms, wholly north of the north side of the causeway, called the Little Bridge, the flats under it had been sold and conveyed in fee, and, therefore, could not pass; and all flats, south of the Little Bridge, had ceased to be adjoining the parcel of land described, and, therefore, did not pass as flats adjoining.

We have already stated as doubtful, and at least not necessary to be decided in this case, whether by the deeds of Chenery and others in 1794, and succeeding years, the Proprietors of the West Boston Bridge took any land or flats beyond the one hundred and thirty feet for the causeway and lateral canals; but if they did, and intended by their deed to convey to the demandant any flats south of the causeway, it would have been easy to express that intent by a few additional words, as " all their remaining rights to flats on the south side of the causeway or Little Bridge," or " on both sides," or words equivalent.

The fact mentioned in the agreed statement, that actual

.ivery of seisin was made by the proprietors, by the delivery of their deed by their agent on the premises, we think can make no difference. Livery of seisin cannot enlarge the estate expressed in the charter of feoffment. If not embraced in the deed, livery of seisin could not aid it.

It is said, in support of the demandant's construction, that by the vote of the West Boston Bridge proprietors, the agent had authority to convey all their remaining flats. Suppose it was so; the question is not one of authority but whether, however large his authority, the agent did in fact convey any flats south of the causeway. This must depend on the terms of their deed executed by him.

The view we have taken of the construction of this deed renders it unnecessary to consider, whether in form the deed executed by the agent of the Proprietors of the West Boston Bridge to the demandant was valid, either at common law or under the *St.* 1809, *c.* 112. Our opinion proceeds on the hypothesis, that if the deeds were duly executed, the demanded premises did not pass by them, and the demandant is not entitled to recover.                    *Demandant nonsuit.*